Filed 12/11/13  Franklin v. Merkin CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| J. DAVID FRANKLIN, SR., | D063026 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00097718-CU-PO-CTL) |
| DONALD MERKIN, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed in part; reversed in part.

J. David Franklin, Sr., in pro. per., for Plaintiff and Appellant.

Donald Merkin, in pro. per., for Defendant and Respondent.

I.

INTRODUCTION

J. David Franklin, Sr. (Senior) contends that the trial court erred in granting

defendant and respondent Attorney Donald Merkin's special motion to strike Senior's

complaint pursuant to the anti-SLAPP[1] statute (Code Civ. Proc., § 425.16.)[2] Senior's complaint alleged two causes of action against Attorney Merkin—malicious prosecution and intentional infliction of emotional distress. Both claims were based on Attorney Merkin's filing a breach of contract claim against Senior, on behalf of a client, alleging that Senior was liable for breach of a written lease for real property. In a malicious prosecution claim, Senior alleged that Merkin had maliciously filed the action without probable cause, and that the action had been terminated in Senior's favor. In his intentional infliction of emotional distress claim, Senior alleged that Attorney Merkin's filing the lawsuit had caused him to suffer severe emotional distress.

We conclude that Senior met his minimal burden under the anti-SLAPP statute to establish a prima facie case with respect to all three elements of his malicious prosecution cause of action: favorable termination, lack of probable cause, and malice. Specifically, we conclude that Senior received a summary judgment on the merits in his favor in the underlying action, Attorney Merkin filed the breach of contract claim against Senior without any reasonable basis for believing that Senior might be liable on the lease, and there is ample evidence in the record from which a jury could find that Attorney Merkin acted with malice. However, we also conclude that Senior failed to carry his burden of establishing a probability of prevailing on his claim of intentional infliction of emotional

---

[1] SLAPP stands for Strategic Lawsuit Against Public Participation. (See *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)

[2] Unless otherwise specified, all subsequent statutory references are to the Code of Civil Procedure.

distress. Accordingly, we reverse the trial court's order granting Attorney Merkin's special motion to strike with respect to the malicious prosecution claim and affirm the order as to the intentional infliction of emotional distress claim.[3]

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The lease agreement*

In December 2008, Senior's son, John David Franklin, Jr. (Junior), entered into a five-year eight-month lease (the Lease) with the Victor Family Trust (the Trust) for an industrial building in San Marcos (the Property). The Lease was signed by Ken and Beverly Victor (the Victors) on behalf of the Trust as lessor and by "John D. Franklin" as lessee. The Lease lists Mike Napierala as the broker for both the lessor and lessee, and provides Napierala's business address and telephone number.

---

[3]     While this appeal was pending, Attorney Merkin filed a motion for sanctions against Senior for filing a frivolous appeal. We conclude that Senior's appeal is not frivolous, and is in fact meritorious with respect to the malicious prosecution claim. Accordingly, we deny the motion for sanctions.

We also note that Attorney Merkin's appellate brief is replete with factual assertions that are not supported by any citation to the record, in clear violation of a basic rule of court. (See Cal. Rules of Court, rule 8.204(a)(1)(C) [stating that each brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].) All rule references are to the Cal. Rules of Court. We choose to exercise our authority under rule 8.204(e)(2)(C), to disregard such noncompliance rather than to order corrections or strike the brief with leave to file a new brief (see rule 8.204(e)(2)(A),(B)), not because Attorney Merkin's transgressions were minor, but because, as discussed below, we conclude that many of his arguments are without merit and we do not wish to further delay the proceedings. (See *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 113 [lamenting failure to provide adequate record citations, but choosing to disregard noncompliance so as not to further delay the appeal].)

3

B.    *The unlawful detainer action*

In November 2010, the Trust filed a verified unlawful detainer complaint against Junior.  In its complaint, the Trust alleged that Junior had entered into the Lease with the Trust.  In January 2011, Junior filed a verified answer to the complaint, and admitted that he had entered into the Lease with the Trust.  Senior represented Junior in the unlawful detainer action.  On February 10, the Trust and Junior entered into a stipulated judgment in the unlawful detainer action that resolved issues pertaining to possession of the Property.  Junior signed the stipulated judgment as defendant and Senior signed the stipulated judgment as Junior's counsel.[4]

C.    *The underlying litigation giving rise to this action*

Meanwhile, in January 2011, Junior filed an action against the Trust and the Victors.[5]  In March 2011, Attorney Merkin filed, on behalf of the Trust, a cross-complaint alleging a breach of contract cause of action against both Junior and Senior, and a fraudulent inducement cause of action as to Junior, only.  Both claims arose from the Trust's lease of the Property.  In the general allegations portion of the cross-complaint, the Trust alleged:

> "On or about December 24, 2008, 'John David Franklin' offered to
> lease the [Property] from [the Trust].  The offer was made through a
> Coldwell Banker real estate brokerage sales associate.[6]  For the

---

[4]    Although the stipulated judgment in the record is not signed by a judge, it is undisputed that the unlawful detainer was resolved by way of the stipulated judgment.

[5]    Junior's complaint is not in the record.

[6]    It is undisputed that Napierala was the sales associate.

4

purpose of inducing plaintiff to lease the [Property], [Junior] submitted a rental application signed by 'John David Franklin' purportedly containing identification about [Junior] [b]ut in fact containing information about his father, [Senior]."

In addition, the Trust alleged that the name "John David Franklin, Jr." did not appear in the Lease, and that that "Senior went into possession [of the Property] by storing [on the Property] personal property owned by him." The Trust also alleged, "[Senior] either signed the lease or authorized his son, [Junior] to sign for him."

In the breach of contract cause of action against Junior and Senior, the Trust incorporated these general allegations and further alleged that "[c]ross-defendants, and each of them, are in breach of the [L]ease." In its fraudulent inducement cause of action against Junior, the Trust incorporated the general allegations and further alleged that Junior had knowingly and intentionally misrepresented to the Trust that the financial and credit records he provided to the Trust pertained to him when they in fact pertained to Senior. The Trust also alleged that Junior had made these misrepresentations for the purpose of "inducing acceptance of the lease offer," and that the trustees of the Trust had relied on the misrepresentations, to the Trust's detriment.

In September 2011, Senior filed a motion for summary judgment. In his brief in support of his motion, Senior argued that he could not be found liable on the Trust's breach of contract claim because he had not signed the Lease and was not a party to the Lease. Among other items of evidence, Senior supported his motion with a declaration stating that he had not signed the Lease, Junior's declaration stating that he had signed the Lease and that Senior had not been involved in any manner in the leasing of the Property,

5

and Napierala's deposition testimony in which he stated that he had personally witnessed Junior sign the Lease.

Also in September 2011, the Trust substituted an attorney in place of Attorney Merkin, and Attorney Merkin had no further involvement in the case.

In December 2011, Senior and the Trust entered into a stipulation that stated that the Trust did not intend to oppose Senior's summary judgment motion and that the trial court could decide the motion based on Senior's moving papers.[7]

In March 2012, the trial court granted Senior's motion for summary judgment. In its order granting the motion, the court stated, "[T]he undisputed evidence establishes that the [Lease] was not signed by [Senior] and he is not a party to the [Lease]." The court added, "[The Trust's] failure to file [an] opposition is an admission that this summary judgment motion is meritorious." In April 2012, the court entered judgment in favor of Senior on the cross-complaint.

D.    *This action*

1.    *Senior's complaint*

In May 2012, Senior filed a complaint against Attorney Merkin, alleging causes of action for malicious prosecution and intentional infliction of emotional distress. Both causes of action were premised on Attorney Merkin's filing and maintaining the cross-complaint on behalf of the Trust in the underlying litigation. In his malicious prosecution claim, Senior alleged that Attorney Merkin had maliciously "acted without reasonable or

---

7    Although the stipulation that is in the record is unsigned, it is undisputed that Senior and the Trust entered into the stipulation.

probable cause to believe that [Senior] was the lessee on the [L]ease."  Senior further alleged that the trial court in the underlying litigation had granted Senior's motion for summary judgment on the breach of contract cause of action, and entered a judgment in his favor.

In his claim for intentional infliction of emotional distress, Senior incorporated the allegations of his malicious prosecution claim and alleged, "As a direct result of the filing of the frivolous Cross-Complaint against [Senior], severe emotional distress was inflicted upon [Senior]."

2. *Attorney Merkin's special motion to strike*

In August 2012, Attorney Merkin filed a special motion to strike.  Merkin argued that both causes of action in Senior's complaint arose from activity that is protected under the anti-SLAPP statute, namely, Attorney Merkin's filing a lawsuit.  Merkin further maintained that Senior would be unable to carry his burden of establishing a probability of prevailing on his malicious prosecution cause of action.  Merkin contended that he had "[l]ots of probable cause" to file a breach of contract claim against Senior, noting that Senior and Junior had the same name and asserting that it could not be determined from the Lease which individual had signed the Lease.  Attorney Merkin also contended that the fact that Senior's credit information had been provided to the Victors and that Senior likely stored vehicles belonging to him on the Property also supported the conclusion that Merkin had probable cause to file the breach of contract claim against Senior.  Attorney Merkin also argued that there had been no termination of the underlying litigation on the merits in favor of Senior because the Trust had agreed not to oppose Senior's summary

7

judgment motion "so long as no damages, attorney[] fees or costs were sought." (Underlining omitted.) Finally, Merkin contended that there was no "evidence of actual malice as Mr. Merkin did not know of the Franklins prior to meeting the Victors."

Attorney Merkin supported his motion to strike with his own declaration in which he stated that prior to filing the cross-complaint, he learned that Senior and Junior had been indicted in Arizona on charges of fraud and theft related to a used car dealership that they owned called Hurricane Motors and a "financing affiliate" that they owned called Riteway. Attorney Merkin claimed that he had spoken with the prosecutor in the Arizona case, a person whom Merkin "knew to be extremely dedicated and reliable." According to Merkin, the prosecutor told him that "the two Franklins, father and son, as part of their scheme to defraud and steal from low income auto buyers, did in fact use each other's names when it suits their purposes." Attorney Merkin also stated that the Victors had given him credit information that had been provided to them by "John Franklin," in the course of the Lease transaction, and that some of the credit information pertained to Senior. In addition, Attorney Merkin stated that some of the vehicles stored on the Property likely belonged to Hurricane Motors, an entity owned and operated by both Senior and Junior.

Attorney Merkin stated that in light of this information "it was impossible to know if either one or the other or both of the Franklins were the proper defendants . . . so I determined to recommend that the Victors cross-complain against both of them." With respect to the resolution of the underlying litigation, Attorney Merkin stated the following:

8

"I was told by the Victors' attorney, Mr. Moya, who participated in the dismissals, that an agreement was reached whereby Mr. Franklin was paid an undisclosed sum, the complaint and the cross-complaint were dismissed but the motion for summary judgment that [Senior] had filed on the cross-complaint would be permitted to come to judgment without opposition by the Victors and with no damages or costs to be awarded."

In support of his motion, Attorney Merkin provided four pages of financial documents that Junior had submitted to Napierala in an effort to secure the Lease. The documents included: (1) a one-page account summary for several different bank accounts with Wells Fargo Bank including accounts for "Franklin & Franklin,"[8] "Hurricane Motor Sales," and "Riteway Manufacturing"; (2) a two-page income statement for Hurricane Motor Sports showing "total income" of nearly $2 million; (3) and one page of an eight-page credit report for a "John D. Franklin." The page of the credit report that Junior provided listed Senior's address as the address of the person who was the subject of the report. The credit report also appears to list the last four digits of the subject's social security number. However, the digits are illegible because there is a black line drawn through the digits.

Attorney Merkin also supported the motion with several documents pertaining to the Arizona case, including copies of a press release from the Arizona Attorney General's

---

[8]   It is undisputed that Senior is a partner with the law firm Franklin & Franklin and that Junior is not affiliated with the firm.

office, an indictment, and two interlocutory opinions from the Arizona Court of Appeals.[9]

### 3. *Senior's opposition*

In his opposition, Senior conceded that his malicious prosecution claim arose from activity that is protected under the anti-SLAPP statute.[10]  However, Senior contended that there was a probability that he would prevail on the claim.  With respect to the favorable termination element, Senior argued that the trial court had entered summary judgment in his favor on the merits, and that there was no admissible evidence to the contrary.[11]  With respect to the probable cause element, among other arguments, Senior contended, "Lack of probable cause in the case at bar is clearly shown by the fact that the Victors sued [Junior] in an unlawful detainer Complaint alleging in the Verified Complaint that [Junior] was the person who entered into a lease agreement with the Victors."  Senior also argued that evidence that Merkin knew the cross-complaint in the underlying litigation against Senior was baseless when combined with evidence that Attorney Merkin attempted to "extort a settlement" of the case, supported the inference that Merkin had acted with malice in filing the cross-complaint.

---

[9]     None of the documents from the Arizona case contain any information suggesting that Junior and Senior attempted to confuse their identities as part of the alleged fraudulent scheme at issue in that case.

[10]     Senior did not address his claim of intentional infliction of emotional distress in his opposition.

[11]     Senior objected to Attorney Merkin's declaration to the extent that the declaration contained Attorney Moya's hearsay statements pertaining to the manner by which Senior obtained summary judgment in the underlying case.

10

Senior supported his opposition with his own declaration, pleadings from both the unlawful detainer action and the underlying litigation that gave rise to this action, deposition testimony from Beverly and Ken Victor, correspondence between Junior and the Victors, and financial documents offered in connection with the leasing of the Property, among other items of evidence.

4.     *The trial court's ruling*

After Merkin filed a reply brief[12] and the trial court held a hearing, the trial court granted Merkin's special motion to strike. The court stated that Senior's claims arose from protected activity, namely Merkin's petitioning a court and representing a client in litigation. The trial court further concluded that Senior would be unable to establish a probability of prevailing on either of his claims. Specifically, the court concluded that although the underlying litigation had terminated in Senior's favor, Senior had failed to carry his burden of establishing that Attorney Merkin maliciously filed the suit without probable cause. The court reasoned in part:

> "At the time [A]ttorney Merkin filed his cross-complaint alleging breach of contract and fraudulent inducement,[13] he was in possession of information that made it unclear whether [Senior] had allowed his credit records to be used by his son to obtain the lease and/or whether [Junior] or [Senior] had signed the lease. Further, as shown by the ten-page declaration of [A]ttorney Merkin in support of his special motion to strike, he engaged in a great deal of due

---

12     Attorney Merkin's reply brief was one page in length. In the brief, Merkin reasserted that he "had more than enough probable cause to cross-complain against [Senior]."

13     As noted above (see pt. II.C., *ante*), the fraudulent inducement claim was alleged solely against Junior.

11

diligence before agreeing to represent the Victors and file an answer and cross-complaint.  At the time he commenced the action, Merkin had information from an Arizona prosecutor, whom he trusted, that the Franklins had been indicted in Arizona in a scheme in which they intentionally misrepresented or confused their identities.  This information, together with the fact that [Junior] did not use the 'Jr.' in signing the lease, and used his father's address for some purposes (although he did not live with his father, being over 40 years of age), renders this a situation in which Merkin had probable cause to pursue the cross-action.  Thus, the case lacks minimal merit.  The overruling of the demurrer by Judge Foster cements this conclusion.[14]

"More importantly, [Senior] has not carried his burden to show a probability he will prevail on his claims for malicious prosecution or [intentional infliction of emotional distress].  Given the declaration of [A]ttorney Merkin, it does not appear that [Senior] can show malice on the part of Merkin at the time of filing the answer and cross-complaint."

5.    *The appeal*

Senior timely appealed from the trial court's order granting Merkin's special motion to strike.  (See § 425.16, subd. (i) ["[a]n order granting or denying a special motion to strike shall be appealable"].)

III.

DISCUSSION

A.    *The trial court erred in granting Attorney Merkin's special motion to strike Senior's malicious prosecution claim*

Senior contends that the trial court erred in granting Attorney Merkin's special motion to strike Senior's malicious prosecution claim.

---

14    The trial court was referring to a ruling in the underlying action.  The ruling is not contained in the record on appeal.

12

1. *General principles of law governing a special motion to strike under the anti-SLAPP statute*

The anti-SLAPP statute states in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

A trial court is required to engage in a two-step process in resolving an anti-SLAPP motion. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.) " 'If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Ibid.*)

" '[A]lthough by its terms section 425.16, subdivision (b)(1) calls upon a court to determine whether "the plaintiff has established that there is a *probability* that the plaintiff will prevail on the claim," (italics added) past cases interpreting this provision establish that the Legislature did not intend that a court, in ruling on a motion to strike under this statute, would . . . determine whether it is more probable than not that plaintiff will prevail on the claim . . . .' [Citation.]" (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 215 (*Daniels*).) Rather, to establish the requisite probability of prevailing, a plaintiff must merely state and substantiate a legally sufficient claim (*Briggs v. Eden Council for*

13

*Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122–1123), thereby demonstrating that his case has at least minimal merit. (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1105 (*Cole*).) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (*Wilson*).)

"In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, *as a matter of law*, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Wilson, supra,* 28 Cal.4th at p. 821, second italics added; see also *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1017 ["The second prong—i.e., whether the plaintiff . . . has shown a probability of prevailing on the merits—is considered under a standard similar to that employed in determining nonsuit, directed verdict or summary judgment motions"].)

2.      *Standard of review*

On appeal, we "review an order granting an anti-SLAPP motion de novo, applying the same two-step procedure as the trial court." (*Cole, supra,* 206 Cal.App.4th at p. 1105.) Thus, "we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate

14

the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

3.     *General principles of law governing the tort of malicious prosecution*

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice." (*Soukup, supra,* 39 Cal.4th at p. 292.)

Although "[t]he tort of malicious prosecution is disfavored . . . this convenient phrase . . . should not be employed to defeat a legitimate cause of action." (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 966.) "[M]alicious prosecution suits are not barred simply because they are disfavored." (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 740.)

4.     *Application*

Senior acknowledges that Attorney Merkin carried his burden of demonstrating that Senior's malicious prosecution action arose from activity that is protected by the anti-SLAPP statute. (See e.g., *Daniels, supra*, 182 Cal.App.4th at p. 215 ["The plain language of the anti-SLAPP statute dictates that every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding"].) Thus, we need consider only whether Senior carried his burden of making a prima facie showing of facts to sustain a

judgment in his favor.[15] We consider each element of Senior's malicious prosecution claim in turn.

a.    *Favorable termination*[16]

In order to establish favorable termination of the prior litigation, a malicious prosecution plaintiff must demonstrate the existence of "a termination reflecting on the merits of the [underlying] action," reflecting "the opinion of the court or the prosecuting party that the [underlying] action would not succeed." (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1149.) Whether the resolution of the underlying action constitutes a favorable termination is a question of law for the court to decide. (*Ibid*.)

Senior presented evidence that the trial court in the underlying litigation granted judgment in his favor. Further, in its order granting Senior's motion for summary judgment, the trial court stated, "[T]he undisputed evidence establishes that the lease agreement was not signed by [Senior] and he is not a party to the [Lease]." Despite this ruling, Attorney Merkin argues that the trial court's summary judgment cannot be

[15]    It is also undisputed that Senior's malicious prosecution claim is a *legally* sufficient claim. The parties dispute only whether Senior presented sufficient *facts* to state a prima facie case of malicious prosecution.

[16]    Senior notes that the trial court found that " 'there was a favorable termination,' " and argues that "the trial court's ruling on 'favorable termination' cannot be reviewed on this appeal . . . [because] [r]espondent did not [c]ross-[a]ppeal to raise this issue." Senior is incorrect. A respondent need not file a cross-appeal in order to assert on appeal that there exists an alternative ground for affirming a trial court's order. (See, e.g., *State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 828.) Thus, we may consider Attorney Merkin's argument that the trial court's order may be affirmed on the ground that the underlying litigation was not terminated on the merits in Senior's favor.

considered a ruling on the merits of the underlying action because the Victors agreed that "they would not oppose [Senior's] motion for summary judgment so long as no damages, attorney[] fees or costs were sought." Attorney Merkin fails to cite to anything in the record to support this assertion. His argument fails for this reason alone. (See, e.g. *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545 ["We are not required to search the record to ascertain whether it contains support for [party]'s contentions"].) In any event, our own review of the record reveals *no* admissible evidence demonstrating that the termination of the underlying litigation was not on the merits in Senior's favor.[17]

Accordingly, in light of the trial court's judgment and summary judgment order in the underlying litigation in favor of Senior, we conclude that Senior received a favorable termination of the underlying litigation.

        b.     *Probable cause*

In *Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 550-551, this court outlined the law governing the probable cause element of a malicious prosecution claim:

> "An action is deemed to have been pursued without probable cause
> if it was not legally tenable when viewed in an objective manner as

---

[17] In one portion of his brief, Attorney Merkin states, "In September 2011, all parties [to the underlying litigation] entered into a stipulation for dismissal of the entire action." In support of this assertion Attorney Merkin cites to the stipulation entered into between Senior and the Trust stating that the trial court could decide the motion for summary judgment based solely on the moving papers. (See pt. II.C, *ante*.) Contrary to Merkin's statement in his brief, the stipulation plainly does not constitute a "stipulation for dismissal of the entire action."

of the time the action was initiated or while it was being prosecuted. The court must 'determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable.' [Citation.] 'The resolution of that question of law calls for the application of an objective standard to the facts on which the defendant acted. [Citation.]' [Citation.] The test the court is to apply is whether 'any reasonable attorney would have thought the claim tenable . . . .' [Citation.] . . .

" 'In analyzing the issue of probable cause in a malicious prosecution context, the trial court must consider both the factual circumstances established by the evidence and the legal theory upon which relief is sought. A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.' [Citation.]"

Attorney Merkin's breach of contract claim against Senior was premised on the theory that Senior was liable on the Lease, either because Senior personally signed the Lease, or because Senior authorized Junior to sign it on his behalf.[18] The evidence in the record establishes that no reasonable attorney would think that Senior could be liable pursuant to either theory.

With respect to the agency theory, there is no evidence in the record from which a reasonable attorney could conclude that Senior authorized Junior to sign the Lease on his behalf. While Attorney Merkin presented evidence that Junior may have provided some credit information that Attorney Merkin reasonably believed pertained to Senior,[19]

---

[18] As noted previously, in the breach of contract cause of action, the Trust alleged, "[Senior] either signed the lease or authorized his son, [Junior], to sign for him."

[19] As noted in part II.D.2., *ante*, Attorney Merkin supported his special motion to strike with four pages of financial documents that Junior submitted to Napierala in an effort to secure the lease: a bank account summary page, an income statement for

Attorney Merkin presented *no* evidence tending to show that Senior authorized Junior to provide such information. Further, even assuming that Senior did authorize Junior to submit his credit information to the Victors, we are aware of no authority, and Attorney Merkin has cited none, that would support the conclusion that such an act would render Senior potentially liable on a *breach of contract* action premised on the Lease—the only cause of action alleged against Senior in the cross-complaint in the underlying litigation.[20]

Hurricane Motor Sports, and one page of a credit report. Attorney Merkin had reasonable grounds to believe that a bank account listed on the bank account summary page belonged to Senior, and also could have reasonably believed that Senior had an ownership interest in Hurricane Motor Sports.

However, Attorney Merkin failed to demonstrate that he had any reasonable cause to believe that the credit report belonged to Senior. Attorney Merkin provided only one of eight pages of the credit report to the trial court. On the page supplied by Attorney Merkin, the credit bureau represented the first five digits of the subject's social security number with X's and Attorney Merkin redacted the last four digits such that the report appeared as follows: "XXX-XX-[redacted digits]." During the hearing on the special motion to strike, Attorney Merkin stated, "I never blocked out any social security numbers for any reason other than privacy."

In opposing the motion to strike, Senior supplied the same page of the credit report, unredacted, as well as additional pages of the credit report. The additional information demonstrates that the credit report belonged to Junior rather than Senior.

[20]    Even assuming that there was evidence that Senior authorized Junior to sign the agreement on his behalf, there was no evidence that Senior provided such authorization *in writing*, as would be required in order to enforce the Lease against Senior on the theory that Junior had signed the lease on Senior's behalf. (See Civ. Code, § 1624, subd. (a)(3) ["(a) The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: [¶] . . . [¶]  (3) An agreement for the leasing for a longer period than one year . . . of real property, or of an interest therein; such an agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent is in writing, subscribed by the party sought to be charged"].)

Attorney Merkin suggests that it was proper to sue Senior for breach of contract because, he maintains, he had probable cause to believe that Senior and Junior "*conspired together.*" (Italics added.) However, a party may not be held liable for *breach of contract* based on a conspiracy theory, and Attorney Merkin did not bring any *tort* claims against Senior. (See *Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 823 ["civil conspiracy requires an underlying tort because it merely *extends liability for the tort* to individuals who shared in the tortfeasor's plan or design, but did not actually commit the tort" (italics added)].)

Further, the theory that Senior personally signed the Lease was not legally tenable under the facts known to Merkin when he filed the cross-complaint. At the time Merkin filed the cross-complaint, he knew that the Trust had filed an unlawful detainer action against Junior in which the Trust had alleged that *Junior* had entered into the Lease.[21] Junior filed an answer in the unlawful detainer action in which he *admitted* having entered into the Lease. In admitting this allegation, Junior bound both himself *and the Trust* to the truth of the factual allegation in the Trust's complaint that Junior had entered into the Lease. (See, e.g., *Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 452 [noting that "a judicial admission is ordinarily a factual allegation by one party that is admitted by the opposing party," and that "[a] judicial admission is . . . conclusive both as to the admitting party and as to that party's opponent" (italics omitted)].) As Attorney Merkin alleged in the cross-complaint against Senior, the Trust and Junior had entered

---

21      Attorney Merkin referred to the unlawful detainer action in his cross-complaint against Senior and Junior.

into a stipulated judgment in February 2011, settling the unlawful detainer case. Finally, it is undisputed that only one individual signed the Lease. Thus, under the facts known to Attorney Merkin at the time he filed the cross-complaint, the Trust had no viable claim against anyone other than Junior for breach of the Lease.

Accordingly, we conclude that the trial court erred in determining that Senior failed to establish that Attorney Merkin lacked probable cause in filing the breach of contract claim against Senior in the underlying action.

### c. *Malice*

In *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522 at page 1543 (*Jay*), the court outlined the law governing the malice element of a malicious prosecution claim:

> " 'The "malice" element . . . relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.] The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive. [Citation.]' [Citation.]

> "The lack of probable cause is one factor in determining the presence of malice, but alone it is insufficient. [Citation.] 'Merely because the prior action lacked legal tenability, as measured objectively (i.e., by the standard of whether any reasonable attorney would have thought the claim tenable [citation]), *without more,* would not logically or reasonably permit the inference that such lack of probable cause was accompanied by the actor's subjective malicious state of mind. In other words, the presence of malice must be established by other, additional evidence.' [Citation.]"

" 'For purposes of a malicious prosecution claim, malice "is not limited to actual hostility or ill will toward [appellant]. Rather, malice is present when proceedings are instituted primarily for an improper purpose." [Citation.]' " (*Oviedo v. Windsor Twelve*

21

*Properties, LLC* (2012) 212 Cal.App.4th 97, 113 (*Oviedo*).)  For example, evidence suggesting that " ' "the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim" ' " (*ibid.*), and evidence that an attorney failed to conduct an adequate investigation before filing a lawsuit (*Sycamore Ridge Apartments, LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1407) supports a finding of malice.

"[T]he defendant's motivation is a question of fact to be determined by the jury." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 874.)  "Because direct evidence of malice is rarely available, 'malice is usually proven by circumstantial evidence and inferences drawn from the evidence.' [Citation.]" (*Jay, supra,* 218 Cal.App.4th at p. 1543.)

In this case, in his special motion to strike, Attorney Merkin stated that he had spent "three weeks investigating . . . before agreeing to take the case," and in his supporting declaration, Merkin stated that his initial contact pertaining to the case was a February 8, 2011 meeting with the Victors.

In opposing the special motion to strike, Senior lodged a February 14, 2011 letter that Attorney Merkin sent to Senior in which Merkin stated the following:

> "This office represents Kenneth and Beverly Victor and the Victor Family Trust . . . .
>
> "I will be answering and cross-complaining on or before March 2, 2011.  I am writing this to give you an opportunity to settle before I file.  [¶] . . .  The Victors will accept $8,500 in full settlement on behalf of you and your son on condition that the premises are vacated on or before March 2, 2011. . . .  [¶]  If you do not agree to this offer, which sounds pretty good to me, the Victors will cross-

22

complain against your son—and against you, since you are a signatory on the lease."[22]

Thus, contrary to Merkin's assertion that he conducted a *three-week long* investigation prior to taking the case, Senior presented evidence that Attorney Merkin was representing the Victors just *six days* after his initial meeting with the Victors. In addition, the February 14 demand letter constitutes evidence that Attorney Merkin filed the cross-complaint against Senior for the " ' "the purpose of forcing a settlement which has no relation to the merits of the claim." [Citation.]' " (*Oviedo, supra,* 212 Cal.App.4th at p. 113.)

Further, while Attorney Merkin stated in his declaration that he had undertaken "thorough due diligence" prior to agreeing to represent the Victors in the underlying litigation, the vast majority of that investigation focused on learning the allegations related to the Arizona case, rather than attempting to learn the basic facts pertaining to the leasing of the Property. For example, Attorney Merkin did not state that he spoke with, or attempted to speak with, the attorney representing the Trust in the unlawful detainer action against *Junior* premised on the Lease.[23] Nor did Attorney Merkin state that he

---

[22]    Although the letter is dated February 14, *2010*, it is clear from the remainder of the letter that the Merkin intended to date the letter February 14, *2011*.

[23]    In his brief on appeal, Attorney Merkin states, without any citation to the record, that he *did* have a telephone conversation with the attorney representing the Trust in the unlawful detainer action prior to agreeing to take the case. However, Attorney Merkin's declaration contains no such statement. Further, Attorney Merkin fails, even in his brief, to state any facts that he purportedly learned from this telephone conversation that would have supported filing a breach of contract claim against Senior. As noted previously, the

had attempted to speak with Napierala, the broker whose name was listed on the Lease, in an attempt to determine the proper defendant for a breach of contract cause of action premised on the Lease. Under these circumstances, a reasonable fact finder could conclude that Attorney Merkin failed to conduct an adequate investigation prior to filing a breach of contract claim against Senior.

In sum, there is evidence in the record from which a fact finder could find both that Attorney Merkin failed to conduct an adequate investigation before filing the breach of contract cause of action against Senior, and that Attorney Merkin filed the claim in an attempt to force a settlement from Senior without any prospect of prevailing on the merits of the claim. When combined with evidence of the objective unreasonableness of the breach of contract claim against Senior (see pt. III.A.4.b., *ante*), we conclude that there is sufficient evidence from which a trier of fact could infer that Attorney Merkin maliciously filed the cross-complaint against Senior.

B.     *The trial court's order granting Merkin's special motion to strike Senior's intentional infliction of emotional distress claim must be affirmed because Senior failed to carry his burden of demonstrating a probability of prevailing on this claim*

Although Senior appears to contend that the trial court erred in granting Merkin's special motion to strike his intentional infliction of emotional distress claim, Senior fails to present any argument on appeal specifically addressing this claim. Senior does not contend on appeal that the trial court erred in concluding that Merkin carried his burden of demonstrating that the claim arose from protected activity. Nor does Senior maintain

Trust sued *Junior* in the unlawful detainer action, so it is far from clear how such a conversation would support filing an action against *Senior*.

24

that he carried his burden of demonstrating a probability of prevailing on this claim. Further, in opposing Merkin's special motion to strike, Senior failed to present any argument or evidence demonstrating that he would be able to establish the elements of his intentional infliction of emotional distress claim.

While it is true that in his brief in support of his special motion to strike, Merkin cited *Martinez v. Metabolife Intern., Inc.* (2003) 113 Cal.App.4th 181, 188 (*Martinez*), and argued that the malicious prosecution and intentional infliction of emotional distress claims could "be considered together within the framework of [section 425.16]," we read this portion of Merkin's brief as merely arguing that both claims arose from protected activity because the principal thrust or gravamen of each cause of action was Merkin's filing a lawsuit against Senior. (See *Martinez, supra*, at p. 188 ["We conclude it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies"].) *Merkin's* argument that both claims are within the scope of the anti-SLAPP statute because they were both premised on the same petitioning act did not relieve *Senior* of his burden of demonstrating the probability of prevailing on each claim.

Claims for malicious prosecution and intentional infliction of emotional distress have distinct elements. (Compare *Jay, supra,* 218 Cal.App.4th at p. 1539 [" 'To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice [citation]' "] with *So v. Shin* (2013) 212 Cal.App.4th 652, 671 [listing

25

elements of a cause of action for intentional infliction of emotional distress as "(1) the defendant engages in extreme and outrageous conduct with the intent to cause, or with reckless disregard for the probability of causing, emotional distress; (2) the plaintiff suffers extreme or severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the plaintiff's extreme or severe emotional distress"].)  Senior's presentation of evidence establishing a probability of prevailing on his malicious prosecution claim does not constitute evidence demonstrating a probability of prevailing on his intentional infliction of emotional distress claim.

Accordingly, we conclude that the trial court properly granted Merkin's special motion to strike Senior's intentional infliction of emotional distress claim.

## IV.

## DISPOSITION

The order granting Merkin's special motion to strike is reversed with respect Senior's malicious prosecution claim and affirmed as to his intentional infliction of emotional distress claim. In the interests of justice, the parties shall bear their own costs on appeal.

_____

AARON, J.

WE CONCUR:

_____

O'ROURKE, Acting P. J.

_____

IRION, J.