Filed 10/23/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RGC GASLAMP, LLC,<br><br> Plaintiff and Appellant,<br><br>  v.<br><br>EHMCKE SHEET METAL CO., INC.,<br><br> Defendant and Appellant. | D075615<br><br><br>(Super. Ct. No. 37-2018-00036303-CU-OR-CTL) |
| RGC GASLAMP, LLC,<br><br> Plaintiff and Appellant,<br><br>  v.<br><br>EHMCKE SHEET METAL CO., INC.,<br><br> Defendant and Respondent. | D076594 |

  APPEALS from orders of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed.

  CGS3, Gregory S. Markow, Sean Michael Gaffney and Jamie Altman Buggy for Plaintiff and Appellant in Nos. D07615 and D076594.

  Solomon Ward Seidenwurm & Smith, Thomas Landers and Leah Suzanne Strickland for Defendant and Appellant and for Defendant and Respondent.

Subcontractor Ehmcke Sheet Metal Company (Ehmcke) recorded a mechanic's lien to recoup payment due for sheet metal fabrication and installation work done on a luxury hotel project in downtown San Diego. Project owner RGC Gaslamp, LLC (RGC) secured a bond to release the lien. Thereafter Ehmcke filed three successive mechanic's liens, each identical to the first, prompting RGC to sue it for quiet title, slander of title, and declaratory and injunctive relief. The trial court granted Ehmke's special motion to strike under the anti-SLAPP statute. (Code Civ. Proc., § 425.16.) RGC appeals that ruling and the subsequent ruling on attorney's fees.[1]

The trial court found that Ehmcke met its moving burden because the filing of even an invalid lien is protected petitioning activity. Thereafter, the court found that RGC failed to make a prima facie showing that its sole remaining cause of action for slander of title could withstand application of the litigation privilege. RGC appeals both findings, arguing that the duplicative filing of mechanic's liens *after* the posting of a bond is not protected activity. Relying heavily on *A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118 (*A.F. Brown*), RGC claims Ehmcke could not have filed duplicative liens in good faith while seriously contemplating litigation.

As we explain, RGC erroneously imports substantive requirements of the litigation privilege into the first step of the anti-SLAPP inquiry. At prong one of the anti-SLAPP inquiry, a defendant need only show a prima facie case that the activity underlying plaintiff's action is protected, not that its acts

---

[1]   The parties stipulated to consolidate the appeals from the order granting the anti-SLAPP motion (D075615) and the subsequent order on fees and costs (D076594). We rejected the stipulation at that time but on our own motion now consolidate the appeals for purposes of decision. (See *Hong Sang Market, Inc. v. Peng* (2018) 20 Cal.App.5th 474, 481, fn. 1.)

were ultimately *lawful*. Moreover, even if the good faith and serious contemplation criteria in *A.F. Brown* applied here, Ehmcke met that moving burden once its erroneously excluded reply declarations are considered. With the burden shifted on prong two, RGC failed to make a prima facie showing that the litigation privilege did not bar its slander-of-title cause of action. The anti-SLAPP motion was thus properly granted, and we likewise affirm the subsequent attorney's fees and costs award.

FACTUAL AND PROCEDURAL BACKGROUND[2]

RGC is the developer and owner of the Pendry Hotel in downtown San Diego. Ehmcke performed sheet metal installation and fabrication for the project and alleged it was not paid after completing its subcontracting work in April 2017. In September 2017, Ehmcke filed and recorded a mechanic's lien (first lien) for $257,978 against the property. The following month, RGC secured and recorded a bond from Liberty Mutual for $322,473 to release the first lien. In December, Ehmcke filed a second mechanic's lien identical to the first lien.

A few months passed. On April 10, 2018, Ehmcke filed and recorded a series of documents in which it withdrew the first and second liens and filed a

---

[2] We grant the parties' joint request to augment the record with RGC's notice designating the record on appeal, Ehmcke's notice of cross-appeal, and Ehmcke's notice designating the record on appeal. (Cal. Rules of Court, rule 8.155(a)(1)(A) [permitting augmentation with "[a]ny document filed or lodged in the case in superior court"]; further rule references are to the California Rules of Court.) Although RGC's designation of the record on appeal is missing a file stamp, we take judicial notice of the fact that it was filed from the notation in the Register of Actions. We take judicial notice of that Register of Actions itself pursuant to sections 452, subdivision (d) and 459, subdivision (a) of the Evidence Code. Although that document is properly included in a prepared appendix (rules 8.124(b)(1)(A), 8.122(b)(1)(F)), it was neither filed nor lodged in superior court to permit augmentation (rule 8.155(a)(1)(A)).

3

third identical mechanic's lien for the same work.[3] RGC once again obtained a bond from Liberty Mutual to release the third lien, recording the instrument in June. Then on July 5, 2018, Ehmcke withdrew the third lien and filed a fourth lien on the project that was duplicative of the first, second, and third liens.

RGC initiated this action on July 19, filing a verified complaint for quiet title, slander of title, and declaratory and injunctive relief. Attached as exhibits were copies of the four recorded mechanic's liens, withdrawals of the first, second, and third liens, and surety bonds for the first and third liens. Ehmcke responded by filing a special motion to strike pursuant to the anti-SLAPP statute, Code of Civil Procedure section 425.16, subdivision (b), contending the claims all arose from protected petitioning activity. It further argued that the quiet title and declaratory relief claims were mooted by its release of all four liens, while the remaining slander of title claim was barred by the litigation privilege.

Attached to its anti-SLAPP motion was a declaration by Ehmcke Vice President, Billy Taylor. Taylor stated that Ehmcke had not been paid for sheet metal installation and fabrication work at the Pendry Hotel. Subsequently, it recorded four mechanic's liens, all since released. RGC's lawsuit challenged the fourth lien, recorded on July 5, 2018. According to Taylor, "Before Ehmcke retained Solomon Ward as counsel it was not properly advised of the legal and statutory scheme regulating mechanic's lien law in California." But after retaining the firm, Ehmcke promptly released the fourth mechanic's lien. As of August 28, 2018, there had been no

---

3    RGC averred that Ehmcke's release of the first lien "was without legal effect," as it had already been released upon recording of the release bond.

mechanic's liens recorded against the property, and Taylor asserted that "Ehmcke does not intend to record any additional mechanic's liens."

RGC opposed the anti-SLAPP motion, arguing that the filing of duplicative mechanic's liens was neither protected petitioning activity nor covered by the litigation privilege. As it does on appeal, RGC relied primarily on *A.F. Brown, supra*, 137 Cal.App.4th 1118, asserting that although the first lien was likely privileged, subsequent identical liens were not. RGC claimed that Ehmcke could not and did not file the second, third, and fourth mechanic's liens in good faith or while a lawsuit was under serious consideration. Describing the statutory scheme as protecting both contractors and owners, RGC maintained that the reasons for treating a first mechanic's lien as privileged did not extend to subsequent duplicative liens. Because the mechanic's lien laws (Civ. Code, § 8200 et seq.) make no provision for repeat liens after an owner posts a release bond, RGC suggested that permitting such duplicative liens would render statutory bond protections afforded to owners under Civil Code section 8424 illusory.[4]

In conjunction with its opposition, RGC submitted a declaration by attorney Gregory Markow authenticating the various recorded documents attached as exhibits to the complaint. Markow also authenticated a demand letter sent to Ehmcke's president on July 16, 2018. In it, Markow told Ehmcke that the fourth lien was untimely filed (§ 8414) and therefore invalid. Warning that Ehmcke's failure to release the lien might damage RGC in excess of $2 million, the demand letter stated that RGC would pursue its legal remedies if Ehmcke did not release the lien by July 20.

---

[4] Further statutory references are to the Civil Code unless otherwise specified.

5

Ehmcke responded that RGC had conflated the two prongs of the anti-SLAPP inquiry by using the litigation privilege to define the scope of protected activity. According to Ehmcke, anti-SLAPP protection was not negated by its filing of a statutorily invalid mechanic's lien. Nor could RGC show its claims had minimal merit when the recording of even an invalid mechanic's lien was covered by the litigation privilege. Ehmcke contested RGC's assertion that it had acted in bad faith, submitting three new declarations with its reply.[5]

Both parties filed evidentiary objections. RGC objected to the reply evidence in its entirety. The court struck all three reply declarations, citing the general rule that new evidence may not be submitted by an anti-SLAPP movant on reply. (See *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537 (*Jay*).)

At the hearing, the trial court gave its tentative ruling. Ehmcke had to show that RGC's action arose from its protected activity, and the filing of a mechanic's lien met that burden. The burden then shifted to RGC to establish a probability of prevailing on the merits. RGC could not do so because although what Ehmcke did was wrong, the filing of the fourth mechanic's lien remained protected by the litigation privilege (§ 47, subd. (b)). Following lengthy argument by both sides, the court confirmed its tentative, while expressing discomfort with the possibility that an owner like RGC would have no judicial remedy when faced with duplicative liens. As the court explained in its minute order, "The recording of a mechanic's lien satisfies Ehmcke's prong I 'arising out of' anti-SLAPP burden and is an act absolutely privileged pursuant to Civil Code § 47(b), thereby also precluding

---

[5]     To avoid repetition, the reply declarations are described in the discussion.

6

RGC from satisfying its prong II 'likelihood of success on the merits' burden." Although the fourth lien may have been untimely, improper, or statutorily unauthorized, the litigation privilege "is absolute and applies irrespective of Ehmcke's evil motives or the total lack of merit of the recorded lien."

Having prevailed on its anti-SLAPP motion, Ehmcke sought an award of attorney's fees and costs. (Code Civ. Proc., § 425.16, subd. (c).) The court granted the request, awarding Ehmcke $30,000 in attorney's fees and $1,062 in costs.

## DISCUSSION

RGC challenges the anti-SLAPP ruling, arguing the filing of repetitive mechanic's liens is protected by neither the anti-SLAPP statute nor the litigation privilege. To the extent we are inclined to reverse the trial court's anti-SLAPP ruling, Ehmcke cross-appeals the evidentiary ruling striking all three declarations submitted on reply. As we explain, the anti-SLAPP motion was properly granted. The filing of a mechanic's lien constitutes protected activity, even if the lien was invalid or otherwise improper. Although we disagree with *A.F. Brown*'s suggestion that an anti-SLAPP moving party must establish that a mechanic's lien must be filed in good faith and in serious contemplation of litigation, those requirements too are met if the erroneously excluded reply declarations submitted by Ehmcke are considered. Next, RGC fails to demonstrate a likelihood of overcoming the litigation privilege on the merits as to its sole remaining claim for slander of

7

title.  The anti-SLAPP motion was properly granted, as was the subsequent request for fees and costs.[6]

1.    *Legal Principles*

This case addresses the applicability of statutory anti-SLAPP protections to an improperly filed duplicative mechanic's lien.  To understand the issues in the appeals and cross-appeal, we provide some background concerning both statutory schemes.

a.    *Mechanic's Liens*

California's constitution enshrines a right to record a mechanic's lien: "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens."  (Cal. Const., art. XIV, § 3.)  A mechanic's lien gives a contractor, supplier, or laborer a security interest in real property to secure the right to payment for work performed or materials delivered.

---

[6]    Ehmcke seeks judicial notice of its release of the fourth mechanic's lien recorded on July 20, 2018 (exhibit 1), the fourth lien it recorded on July 5, 2018 (exhibit 2), and pleadings connected to separate litigation among RGC, the general contractor, and various subcontractors (*RGC Gaslamp, LLC v. Davis/Reed Construction, Inc., et al.* (Super. Ct. San Diego County, 2018, No. 37-2018-00036555-CU-BC-CTL) [Exhibits 3–5]).  The request is denied.  Exhibits 1 and 2 were presented to the trial court and are in our record, rendering judicial notice unnecessary.  (See *Davis v. Southern California Edison Co.* (2015) 236 Cal.App.4th 619, 632, fn. 11.)  Exhibits 3 through 5 were not before the trial court, and we follow the usual rule that appellate courts consider only matters that were part of the record at the time the trial court ruled.  (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)  Judicial notice of exhibits 3 through 5 is moreover unnecessary for our decision on the appeals and cross-appeal.  (See *San Diegans for Open Government v. City of San Diego* (2015) 242 Cal.App.4th 416, 432, fn. 6.)

(*Crosno Construction, Inc. v. Travelers Cas. & Surety Co. of Am.* (2020) 47 Cal.App.5th 940, 950 (*Crosno*).) Civil Code sections 8000 to 9566 set forth a comprehensive statutory scheme to resolve payment disputes in public and private construction projects. Mechanic's liens, filed by Ehmcke here, are available only in private works of improvement. (See *Crosno,* at p. 950.)

The statutory scheme reflects a balancing of interests between property owners and claimants. The primary goal of the statutes is to protect a laborer or material supplier who improves an owner's property by assuring payment for the value of work done. (See *T.O. IX, LLC v. Superior Court* (2008) 165 Cal.App.4th 140, 146 (*T.O.*).) At the same time, the statutory scheme reflects a recognition that the recording of a mechanic's lien encumbers the affected real property. Thus, in providing security and a swift remedy, mechanic's lien laws protect both lien claimants and property owners. (*Ibid.*)

As a subcontractor on a private construction project, Ehmcke had a right to record a mechanic's lien. (§ 8400.) As a first step, it had to send preliminary notice to RGC, the project owner. (§§ 8410, 8402.) If RGC believed Ehmcke had no right to claim a lien, it could "immediately file suit to enjoin [Ehmcke] from asserting [its] lien." (*Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803, 822 (*Connolly*).) "By the use of a temporary restraining order if necessary (see Code Civ. Proc., § 527), the plaintiff could secure a hearing before the lien was imposed." (*Connolly,* at p. 822.) There is no indication here that RGC sought such injunctive relief.

The next step after preliminary notice is for a claimant to record a claim of lien. Ehmcke had to record a lien within 90 days of completing its work on the project, or within 30 days of RGC's notice of completion,

9

whichever date arose sooner. (§ 8414.)[7] A copy of the recorded mechanic's lien must be served on the owner. (§ 8416.) At this stage as well, after recordation of a lien but before foreclosure proceedings commence, the owner may seek declaratory or injunctive relief challenging the validity of the lien. (*Connolly, supra,* 17 Cal.3d at pp. 822−823.)[8] Errors in the lien's written demand generally do not invalidate the claim unless a court finds intent to defraud, or that the property was later purchased by an innocent third party, and the lien was so deficient it did not prompt further inquiry. (§ 8422.)

[7]     RGC alleged in its complaint that Ehmcke completed work on the project in April 2017. RGC recorded its notice of completion in January 2018 and filed an amended notice of completion in early February. At the outer end, any mechanic's lien had to have been filed by March 8, 2018, or 30 days after the amended notice of completion. Although the first and second liens met this cutoff, the third and fourth liens did not—a point raised by RGC in opposing the anti-SLAPP motion to claim "the third and fourth liens were not authorized by law and therefore not covered by the litigation privilege."

[8]     Writing for the majority in *Connolly*, Justice Tobriner explained that although the recording of a mechanic's lien or a stop notice effected a taking, California's statutory scheme placed adequate safeguards to comply with due process. (*Connolly, supra,* 17 Cal.3d at pp. 827−828.) It was in this context that *Connolly* indicates owners faced with an unjustified claim of lien could seek a mandatory injunction or declaratory relief. (*Id.* at pp. 822−823.) Post-*Connolly,* an additional procedural safeguard was created in *Lambert v. Superior Court* (1991) 228 Cal.App.3d 383 (*Lambert*) to address the context after foreclosure proceedings commence. An owner may file a motion in the pending foreclosure action itself to remove a mechanic's lien, asking the court to weigh its "probable validity." (*Id.* at p. 388; see generally *Cal Sierra Construction, Inc. v. Comerica Bank* (2012) 206 Cal.App.4th 841, 849−850 [discussing *Connolly* and *Lambert*].) Pursuant to section 8490, subdivisions (b) and (c), a court order or judgment releasing property from a claim of lien or declaring that no lien exists "is equivalent to cancellation of the claim of lien and its removal from the record"; the lien is released once a certified copy of the court order or judgment is recorded.

Claimants enforce their mechanic's liens through foreclosure, and must commence a foreclosure suit within 90 days after recording the lien. (§ 8460, subd. (a).) If a claimant does not timely commence foreclosure proceedings, an owner may file a petition to release the property from the lien. (§ 8480, subd. (a).) Likewise, if foreclosure proceedings are timely commenced, an owner who challenges the validity of the lien may file a motion to remove a mechanic's lien in the pending foreclosure action itself. (*Lambert, supra,* 228 Cal.App.3d at pp. 386−387.)

The recording of a mechanic's lien "may severely hamper [the owner's] ability to sell or encumber that property." (*Connolly, supra,* 17 Cal.3d at p. 812.) "If there were no provisions for releasing the lien, a claimant could file a questionable claim of lien and either cloud the owner's title for the years necessary to litigate the claim or force the owner to pay the claim even though it is disputed. Therefore, when any contractor or subcontractor, the property owner, or any other person who has an interest in the property disputes the correctness or validity of any claim of lien, the property may be released from the lien by recording a bond in the appropriate sum." (9 Miller & Starr, Cal. Real Estate (4th ed. 2020) § 32:66.) "The purpose of the release bond procedure is to provide a means by which, before a final determination of the lien claimant's rights and without prejudice to those rights, the property may be freed of the lien, so that it may be sold, developed, or used as security for a loan." (*Hutnick v. U.S. Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 462 (*Hutnick*).)

Pursuant to section 8424, an owner faced with a mechanic's lien may record a release bond amounting to 125 percent of the lien claim. "On recordation of the bond, the real property is released from the claim of lien and from any action to enforce the lien." (§ 8424, subd. (c).) Where a

11

claimant records multiple liens against a property, and the aggregate sum of those lien claims exceed the contractor's underlying claim, an owner only needs to record a single release bond to cover the underlying claim. (*T.O., supra,* 165 Cal.App.4th at p. 148 [an owner could release nine duplicative liens by requesting a court order requiring it to post a single release bond to cover paving contractor's $79,831 claim].)

Once a release bond is recorded, it becomes the lien claimant's sole recourse for collecting sums due. (9 Miller & Starr, Cal. Real Estate, *supra,* § 32:66.) "The recording of the release bond does not extinguish the lien; rather, the bond is substituted for the land as the object to which the lien attaches." (*Hutnick, supra,* 47 Cal.3d at p. 463; see *T.O., supra,* 165 Cal.App.4th at p. 145.) A claimant must commence an action on the bond within six months of receiving notice of the bond. (§ 8424, subd. (d).)

b.      *Anti-SLAPP Statute (Code Civ. Proc, § 425.16)*

"Enacted by the Legislature in 1992, the anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*); Code Civ. Proc., § 425.16, subd. (a).) To achieve this goal, the statute authorizes defendants to file a special motion to strike claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States . . . or California Constitution in connection with a public issue, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).) Through this summary-judgment-like procedure, the anti-SLAPP statute aims to eliminate meritless or retaliatory litigation at an early stage of proceedings. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 312 (*Flatley*).)

We use a two-step process to resolve an anti-SLAPP motion. In the first step, the moving defendant bears the burden to establish that the challenged claim arises from the defendant's protected activity. (*Wilson, supra,* 7 Cal.5th at p. 884; *Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).) If the defendant carries its threshold burden, the burden then shifts to the plaintiff to demonstrate that its claims have minimal merit. (*Wilson,* at p. 884.) "The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." (*Baral,* at p. 396.) If a plaintiff does not make that showing, a court will strike the claim. (*Ibid.*; *Wilson,* at p. 884.) A defendant that prevails on an anti-SLAPP motion to strike is generally entitled to recover attorney's fees and costs. (Code Civ. Proc., § 425.16, subd. (c)(1).)

2. *Prong One: Does RGC's Claim Arise Out of Protected Activity?*

We review de novo whether RGC's claims arise from protected activity. (*Wilson, supra,* 7 Cal.5th at p. 884.) At this first step of the anti-SLAPP inquiry, Ehmcke "must make two related showings." (*Id.* at p. 887.) "Comparing its statements and conduct against the statute, it must demonstrate activity qualifying for protection. (See [Code Civ. Proc.,] § 425.16, subd. (e).) And comparing that protected activity against the complaint, it must also demonstrate that the activity supplies one or more elements of a plaintiff's claims." (*Wilson,* at p. 887.) Here, only the first step is at issue—RGC does not dispute that its action arises out of the filing of the fourth successive mechanic's lien after proper bonding. Instead, it disputes whether such activity *qualifies* for protection in the first instance.

Among other types of communications, the anti-SLAPP statute protects "any written or oral statement or writing made before a legislative, executive,

13

or judicial proceeding" (Code Civ. Proc., § 425.16, subd. (e)(1)) or "in connection with an issue under consideration or review" in such proceedings (*id.*, subd. (e)(2)). Statements made in preparation for litigation or in anticipation of bringing an action fall within these categories. (*Flatley, supra,* 39 Cal.4th at p. 322, fn. 11, citing *Briggs v. Eden Council for Hope and Opportunity* (1999) 19 Cal.4th 1106, 1115 (*Briggs*).) If a statement falls into one of these categories, a defendant does not separately need to show that his or her statement was made in connection with a "public issue." (*Briggs,* at p. 1123.)

     a.     *As a prerequisite to a foreclosure action, recordation of the fourth mechanic's lien was protected despite its invalidity.*

At the first prong, courts consider whether a defendant has made a prima facie showing that activity underlying a plaintiff's causes of action is statutorily protected, "not whether it has shown its acts are ultimately lawful." (*Wilson, supra,* 7 Cal.5th at pp. 887−888.) Any claimed illegitimacy of the defendant's acts is an issue that must be raised and supported by the plaintiff in discharging its burden on prong two. (*Id.* at p. 888, citing *Navellier v. Sletten* (2002) 29 Cal.4th 82, 94 (*Navellier*).) "To conclude otherwise would effectively shift to the defendant a [merits] burden statutorily assigned to the plaintiff." (*Wilson,* at p. 888; quoting Code Civ. Proc., § 425.16, subd. (b)(1).)

It is here that RGC's argument falters. RGC asserts that although the filing of a single mechanic's lien is protected activity, the filing of duplicative liens after proper bonding is not. But a defendant does not have to establish that its conduct was ultimately lawful or constitutionally protected at prong one. (*Navellier, supra,* 29 Cal.4th at p. 94; *Wilson, supra,* 7 Cal.5th at pp. 887−888.) RGC's quiet title, slander of title, and declaratory relief causes of action all challenged Ehmcke's filing of the fourth mechanic's lien. The

14

filing of a mechanic's lien is a necessary prerequisite to bringing a foreclosure action. (§ 8460.) As such, it is a protected prelitigation statement preparatory to filing a judicial proceeding. (*Briggs, supra,* 19 Cal.4th at p. 1115 [anti-SLAPP statute protects prelitigation statements " 'preparatory to or in anticipation of the bringing of an action or other official proceeding' "].)

*Birkner v. Lam* (2007) 156 Cal.App.4th 275 (*Birkner*) is instructive. Tenants sued their former landlord for wrongful eviction, alleging the landlord violated a San Francisco rent ordinance in serving and refusing to rescind a notice to terminate their tenancy. (*Id.* at pp. 278–279.) The trial court denied the landlord's special motion to strike, concluding his conduct was not in furtherance of a protected right to petition. (*Id.* at p. 280.) The Court of Appeal disagreed, explaining that the landlord's service of lease termination was statutorily protected as a legal prerequisite for bringing an unlawful detainer action. (*Id.* at pp. 281–282.) As such, both the service of and refusal to rescind the termination notice constituted communications preparatory to or in anticipation of legal action, protected under Code of Civil Procedure section 425.16, subdivision (e). (*Birkner*, at pp. 283–284.)

RGC argues that the mechanic's lien framework does not envision duplicative mechanic's liens. But the analysis does not change merely because it alleges Ehmcke's conduct was unlawful. For example, in *Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, debtors challenged a bank's practice of filing collection actions in distant judicial forums to prevent debtors' participation. This abusive practice was itself within the ambit of prong one of the anti-SLAPP statute because it rested on the bank's protected act of filing a complaint. As the court explained, "[t]his conclusion does not imply that the distant forum abuse alleged by the Yus was a valid exercise of

15

Banks' constitutional rights.  The lawfulness of the defendant's petitioning activity is generally not at issue in the 'arising from' prong of the anti-SLAPP inquiry; that question is ordinarily addressed in the second, 'minimal merit' prong of the inquiry relative to the plaintiff's probability of success on the merits." (*Id.* at p. 317, fn. omitted.)[9]

      b.    *No additional showing of good faith or serious contemplation of litigation was required where the prelitigation communication involved the filing of a mechanic's lien.*

Urging a different result, RGC relies on *A.F. Brown, supra,* 137 Cal.App.4th 1118, which considered whether a supplier's issuance of stop payment notices qualified as protected activity.[10]  Concluding it did not, the court explained that the filing of a stop notice, like the filing of a mechanic's lien, "is protected under the anti-SLAPP statute only if done when a lawsuit related to that act was contemplated in good faith and given serious

---

[9]    An exception applies to *illegal* conduct, which is not protected under prong one. (*Flatley, supra,* 39 Cal.4th at p. 320.)  Either a defense concession of illegality or conclusive proof is required for this exception to apply. (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 424.)  Moreover, this exception requires *criminal* conduct, not a mere violation of court rules or statutes. (*G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 616; *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654.)  Even if the filing of duplicative mechanic's liens is statutorily unauthorized, it is not criminal and does not fit the illegality exception.

[10]    In public works projects like that at issue in *A.F. Brown*, stop notices and payment bonds afford the sole remedies. (*Crosno, supra,* 47 Cal.App.5th at p. 950.)  "A stop payment notice notifies a project owner . . . to withhold funds due to the direct contractor sufficient to satisfy the amount of the stop notice claim, plus reasonable litigation costs." (*Ibid.*)  Although this case pertains to a private construction project, the statutes governing remedies in public and private works cover the same subject matter and are construed together. (*Ibid.*)  In private works projects, a subcontractor's filing of a stop payment notice is a prerequisite for an action to enforce payment of the claim stated in the stop payment notice. (§§ 8550−8560.)

16

consideration." (*A.F. Brown*, at pp. 1128−1129.) The supplier's declarations made a preliminary showing that it filed the stop notices in good faith belief of a legally viable claim. (*Id.* at p. 1128.) Nevertheless, the declarations failed to demonstrate that the stop notices were filed *when litigation was under serious consideration*. (*Ibid.*) At best, the supplier averred that it would pursue all available legal remedies, and a threat of *potential* legal action did not demonstrate that a lawsuit was under serious consideration. (*Ibid.*)

We believe *A.F. Brown* was incorrectly decided. The discussion began with the since-undermined premise that activity protected under the anti-SLAPP statute is "coextensive" with that covered by the litigation privilege. (*A.F. Brown, supra,* 137 Cal.App.4th at p. 1124; § 47, subd. (b).) The court then imported into the anti-SLAPP prong one inquiry the same requirements required for the litigation privilege to apply—i.e., that prelitigation statements "relate[] to litigation that is contemplated in good faith and under serious consideration." (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 (*Action Apartment*).) Several other courts have charted a similar course. (See, e.g., *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268 (*Neville*); *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 940−941 (*Bel Air*); *Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 789 (*Bailey*); *People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 824 (*Anapol*); *Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 887.)

As the Supreme Court made clear just months after *A.F. Brown* was decided, although courts may use the litigation privilege "as an aid" in determining whether a given communication arises out of protected activity, the litigation privilege and anti-SLAPP statute serve different purposes and

17

are not necessarily coextensive. (*Flatley, supra,* 39 Cal.4th at pp. 322–323, 325; see also *Third Laguna Hills Mutual v. Joslin* (2020) 49 Cal.App.5th 366, 375 ["The scope of protection from claims under the anti-SLAPP statute is not always the same as the scope of protection for communications under the litigation privilege."]; *Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1519 [challenging *A.F. Brown*'s characterization of the litigation privilege and anti-SLAPP statute as "coextensive," explaining that "the scope of the litigation privilege and the anti-SLAPP statutes significantly differ"].)

Only a few cases endeavor to explain *why* the substantive restrictions to the litigation privilege should apply in prong one to determine whether prelitigation communications qualify for anti-SLAPP protection. *Neville, supra,* 160 Cal.App.4th 1255 drew parallels between the anti-SLAPP statute, which protects communications made "in connection with an issue under consideration or review" (Code Civ. Proc., § 425.16, subd. (e)(2)), and the litigation privilege, which requires a statement be " 'reasonably relevant' " to pending or contemplated litigation. (*Neville,* at p. 1266.) Based on this parallel, the court inferred that to arise out of protected activity in prong one of the anti-SLAPP inquiry, a prelitigation communication must concern the subject of the dispute and be made in anticipation of litigation contemplated in good faith and under serious consideration. (*Id.* at p. 1268.) Apart from *Neville,* other cases have taken a policy approach, importing the good faith and serious contemplation requirements to "ensure[] that prelitigation communications are actually connected to litigation" and further the anti-SLAPP objective "of early dismissal of meritless lawsuits that arise from protected petitioning activity." (*Bel Air, supra,* 20 Cal.App.5th at p. 941; see *Anapol, supra,* 211 Cal.App.4th at p. 824 [requiring that litigation be

18

seriously contemplated "guarantees that hollow threats of litigation are not protected"].)

We sense a potential tension between this line of analysis and the Supreme Court's repeated warnings that prong one requires only a prima facie showing of protected activity, not a showing that the defendant's acts were ultimately lawful or constitutionally protected. (*Navellier, supra,* 29 Cal.4th at p. 94; *Wilson, supra,* 7 Cal.5th at p. 888.) Thus, for example, the anti-SLAPP statute does not "require a defendant to disprove allegations of illicit motive" at this initial stage. (*Wilson,* at p. 887.) Requiring a moving defendant to affirmatively show that its statements were made in good faith while litigation was seriously contemplated would seem, at least in certain contexts, to import a merits inquiry as to whether the statements ultimately arose from protected petitioning activity. On the other hand, such criteria may be helpful in evaluating prelitigation statements that do not intrinsically anticipate litigation. (See, e.g., *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 36–37 [concluding voicemail messages were protected activity].)

We need not resolve this potential tension here. As *Anapol* explains, defendants impliedly satisfy the good faith and serious contemplation of litigation showing where "it is necessary to serve or record a document prior to the commencement of litigation." (*Anapol, supra,* 211 Cal.App.4th at p. 824.) As examples, the *Anapol* court cited *Birkner, supra,* 156 Cal.App.4th 275, 282, where service of a notice of termination was a prerequisite for an unlawful detainer action; *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1480 (*Feldman*), where service of a three-day notice to quit was a "legally required prerequisite to the filing of the unlawful detainer action"; and *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1285, where recording a notice of rescission was a necessary prerequisite for a rescission

19

action. Each of those cases found the moving party's prong one burden met by simple evidence of filing without any additional inquiry into the propriety of the filing. Indeed, *Birkner* and *Feldman* further clarified that a movant is not required at the first stage to demonstrate that its conduct was protected by the litigation privilege. (*Birkner,* at p. 284 [whether landlord's conduct was protected by the litigation privilege was "irrelevant" to prong one analysis]; *Feldman,* at p. 1480, fn. 5 ["Park Lane cross-defendants were not required at the first stage to demonstrate that serving the notice to quit was protected by the litigation privilege."].)

Distinguishing each of these cases on the facts before it, the *Anapol* court reached a different result because the submission of an insurance claim was a necessary prerequisite for *either* litigation or contractual performance. (*Anapol, supra,* 211 Cal.App.4th at p. 827.) As such, it could not be determined "by the mere fact of submission of a claim," that a claim had been submitted in serious contemplation of litigation. (*Ibid.*) Similarly *Bel Air* reasoned, "when a cause of action arises from conduct that is a 'necessary prerequisite' to litigation, but will lead to litigation only if negotiations fail or contractual commitments are not honored, future litigation is merely theoretical rather than anticipated and the conduct is therefore not protected prelitigation activity." (*Bel Air, supra,* 20 Cal.App.5th at p. 941.) Thus, both *Anapol* and *Bel Air* suggest that where litigation is merely a *possible* next step, prelitigation statements do not so easily qualify for anti-SLAPP protection.

Our case is similar to *Birkner, Salma,* and *Feldman* and readily distinguishable from *Anapol* and *Bel Air*. Recording a mechanic's lien is a necessary prerequisite to a foreclosure action. It is not a prerequisite for contractual performance or anything else. As such, it is protected as conduct

20

preparatory to or in anticipation of litigation. (*Briggs, supra,* 19 Cal.4th at p. 1115.) No additional showing was required for Ehmcke to satisfy its moving burden. (*Birkner, supra,* 156 Cal.App.4th at p. 284 [first prong of "is satisfied so long as the record does not show as a matter of law that [defendant's] conduct had 'no "connection or logical relation" to an action and [was] not made "to achieve the objects" of any litigation' "].) Questions as to Ehmcke's subjective intent in filing duplicative liens are more appropriately addressed in the second prong, where RGC must establish the minimal merit of its claims.[11]

In our view, *A.F. Brown* errs by requiring more. The electrical subcontractor (A.F. Brown) sued its material supplier for libel and unfair business practices based on the supplier's issuance of stop notices to a school district where work was performed. (*A.F. Brown, supra,* 137 Cal.App.4th at p. 1125.) In declarations filed with its moving papers, the supplier suggested that the stop notices and collection efforts were aimed at collecting amounts due. Although the *A.F. Brown* court deemed this proffer insufficient to show that "the acts were taken when litigation was under serious consideration" (*id.* at p. 1128), such a showing was not required because a stop payment notice (like a mechanic's lien) is a necessary prerequisite for bringing an

---

[11] We likewise distinguish *Bailey,* which concluded that threats to litigate are not protected where the litigation being threatened is *barred* under res judicata. (*Bailey, supra,* 197 Cal.App.4th at p. 793 [explaining that the right to petition "is not implicated where a party has already exercised that right, has lost on the merits, and is seeking to relitigate the same action"].) That the statutes afford no means to file a mechanic's lien after proper bonding merely provides a defense to a foreclosure action and does not *preclude* the foreclosure action itself. (See, e.g., *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 [defining claim preclusion and issue preclusion].) To construe *Bailey* in the expansive manner suggested by RGC would import a merits inquiry into prong one of the anti-SLAPP analysis.

enforcement action. (See § 8550.) An inquiry into the supplier's motives for filing the stop notices wades into a merits inquiry appropriately reserved for prong two.[12]

      c.     *Assuming an additional showing was required, Ehmcke's reply declarations established that the fourth lien was filed in good faith while seriously contemplating litigation.*

Even if *A.F. Brown* were decided correctly, materials submitted by Ehmcke in conjunction with its reply suggest it filed each mechanic's lien in good faith while seriously contemplating litigation. The trial court struck the reply declarations in their entirety, citing *Jay, supra,* 218 Cal.App.4th 1522, 1537 for the proposition that new evidence is generally not permitted on an anti-SLAPP reply. Although we review that decision for abuse of discretion (*id.* at p. 1536), *Jay* addresses the situation where the moving party attempts to introduce "entirely new evidence." (*Id.* at p. 1537.) Indeed, it specifically recognizes an exception to the general rule where new evidence offered on reply "was supplemental to evidence submitted in the moving papers [and] not brand new." (*Ibid.*; see also *id.* at p. 1538 [permitting new evidence on reply to "fill[] gaps in the evidence created by the [plaintiff's] opposition"].) That is the scenario here, and striking the reply declarations amounted to an abuse of discretion.

RGC alleged in its complaint that Ehmcke filed duplicative liens "for the purpose of adversely affecting title" and "with actual malice." Ehmcke responded to these allegations in its moving papers, submitting a declaration

---

[12]    The *A.F. Brown* court may have reached this result because the supplier relied on the litigation privilege to both meet its moving burden and defeat any showing of minimal merit. (*A.F. Brown, supra,* 137 Cal.App.4th at p. 1126.) *A.F. Brown* was also decided five months before *Flatley, supra,* 39 Cal.4th 299, which clarified that the litigation privilege and protected anti-SLAPP activity are not necessarily coextensive. (*Id.* at pp. 322–323, 325.)

by Vice President Billy Taylor stating that money was due for work performed, leading Ehmcke to file successive liens because it "was not properly advised"; after retaining counsel, Ehmcke released all the liens, and it intended to file no more. Summarizing these factual allegations, Ehmcke characterized the fourth lien as "improper" in its moving brief.

Relying on *A.F. Brown*, RGC countered in its opposition brief, "If, as Ehmcke has declared, it was not properly advised regarding the mechanic's lien framework, then Ehmcke could not have had a lawsuit under 'serious consideration.'" It pointed to the fact that Ehmcke never filed suit to foreclose on the second, third, or fourth liens to suggest it was never seriously considering a lawsuit. As RGC went on to state, "Ehmcke's bad faith desire to cloud RGC's title is further evidenced by its failure to record a release of the fourth and last of the liens until 6 weeks after this lawsuit was filed, and 7 weeks after it had received a demand from RGC to release the lien." In support of the latter claim, RGC submitted a copy of its July 16 demand letter calling the fourth lien untimely and requesting its prompt release by July 20, 2018.

It is in this context that Taylor submitted a declaration on reply clarifying why Ehmcke filed successive liens. This evidence did not contradict his earlier statement of being misadvised; it instead offered texture to rebut the claim that successive liens were filed in a bad faith desire to cloud RGC's title:

> "All four mechanic's liens were recorded while Ehmcke was seriously considering litigation. In fact, Ehmcke typically does not record mechanic's liens, and does so when there is a problem on the job. Here, Ehmcke recorded the mechanic's liens hoping, perhaps naively, that it could avoid the time and expense of litigation to get paid for its work on the Property through the recordings. Eventually, Ehmcke was forced to sue to get paid."

23

In addition, Ehmcke submitted declarations from attorneys Richard McCarthy and Thomas Landers, who described what transpired after Ehmcke received the demand letter. These filings suggested that Ehmcke released the fourth lien on July 20 as RGC had requested, a day after this lawsuit was filed. It filed an amended release a month later to correct a minor clerical error in identifying the fourth lien.[13]

We believe these reply declarations were necessitated by questionable argument in RGC's opposition brief that was not reasonably anticipated at the time Ehmcke filed its moving papers. We easily distinguish this case from *Jay,* where the moving defendants waited until their reply to proffer *any* evidence to meet their moving burden, failing even to address contentions made in the complaint. (*Jay, supra,* 218 Cal.App.4th at p. 1537.) Although the complaint alleged *malice* and an intent to cloud title, Taylor's moving brief responded to these allegations by suggesting Ehmcke was simply misadvised. When RGC used this statement to suggest no lawsuit was ever contemplated, Ehmcke was entitled to clarify any ambiguity. A misleading characterization of when Ehmcke released the fourth lien likewise invited the attorney declarations on reply.

Given the nature of RGC's arguments, new evidence should have been permitted on an anti-SLAPP reply. (See *Jay, supra,* 218 Cal.App.4th at pp. 1537−1538.) It is true that RGC would have been entitled to respond to any new evidence that was received. (*Id.* at p. 1538.) But any response in

---

13 The reply declarations further suggested that Ehmcke's counsel had asked RGC to voluntarily dismiss its action at least eight times after release of the fourth lien, highlighting the deadline to file an anti-SLAPP motion. RGC's counsel did not agree to drop the suit until the evening of the motion deadline. By that point, Ehmcke asserted it had expended substantial attorney's fees necessitated by RGC's delayed response and opted to proceed with the anti-SLAPP motion.

this context could not defeat the motion because it would merely create a disputed factual issue and not bear on whether Ehmcke made a prima facie showing of protected activity on prong one. (See, e.g., *Feldman, supra,* 160 Cal.App.4th at p. 1480, fn. 5 ["The first step of the anti-SLAPP analysis is satisfied, provided that the record does not show as a matter of law that [defendant's] conduct had 'no "connection or logical relation" to an action and [was] not made "to achieve the objects" of any litigation.' "].)

In short, we question the rationale of *A.F. Brown* in light of subsequent developments in anti-SLAPP case law, but even if it were correct, the evidence submitted with Ehmcke's moving and reply papers was sufficient to meet its burden to show that RGC's lawsuit arose out of protected petitioning activity. All four liens were filed when Ehmcke was seriously contemplating litigation, and Ehmcke ultimately did sue to recoup amounts due. Ehmcke did not typically record mechanic's liens and did so only when there were problems. Its goal all along was "to get paid for its work on the Property through the recordings," which is the purpose of the mechanics lien procedure. The attorney declarations likewise demonstrated that Ehmcke released the fourth lien immediately after retaining counsel, the same day requested in the demand letter, and a mere day after the complaint was filed. These actions suggest that although Ehmcke was mistaken about its legal rights at the outset, it recorded its fourth successive mechanic's lien in good faith, seriously contemplating litigation. This prima facie showing suffices to meet the burden on prong one.

3. *Prong Two: Did RGC Offer Sufficient Evidence to Establish the Merit of its Claim?*

The sole cause of action that remained at issue when the anti-SLAPP motion was filed was for slander of title.[14] Because Ehmcke had already released the fourth lien and indicated that no additional liens would be filed, RGC's cause of action for quiet title was moot; there was no longer an "active controversy" for declaratory relief; and injunctive relief was unnecessary. (See *Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 136 [quiet title claim was mooted by withdrawal of homeowners' association claim]; Code Civ. Proc., § 1060 [declaratory relief requires an "actual controversy"]; *Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110, 117 [" 'actual controversy' . . . is one which admits of definitive and conclusive relief by judgment . . . , as distinguished from an advisory opinion upon a particular or hypothetical state of facts"]; *Donald v. Cafe Royale, Inc.* (1990) 218 Cal.App.3d 168, 184 ["Injunctive relief will be denied where, at the time of the order or judgment, no reasonable probability exists of the recurrence of the past acts."].) As a general rule, "[t]he voluntary cessation of allegedly wrongful conduct destroys the justiciability of a controversy and renders an action moot unless there is a reasonable expectation the allegedly wrongful conduct will be repeated." (*Center for Local Government Accountability v. City of San Diego* (2016) 247 Cal.App.4th 1146, 1157.) RGC did not establish any reasonable expectation of recurrence here.

---

14 "The elements of a cause of action for slander of title are '(1) a publication, (2) which is *without privilege* or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss.' " (*Alpha & Omega Development, LP v. Whilcock Contracting, Inc.* (2011) 200 Cal.App.4th 656, 664 (*Alpha & Omega*).)

26

RGC admits its quiet title action was moot once Ehmcke released the fourth lien but nevertheless maintains it was improper to dismiss it under the anti-SLAPP statute because the action was not moot when *filed*. It likewise argues without support that declaratory and injunctive relief was the only way to prevent Ehmcke from filing of successive liens. These are entirely new arguments. When Ehmcke argued mootness in its moving papers below, RGC only responded that its cause of action for slander of title had minimal merit. "It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal." (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3.)[15]

That leaves RGC's slander of title claim. As the responding party, RGC had to make a prima facie showing that this cause of action had minimal merit. (*Wilson, supra,* 7 Cal.5th at p. 884.) Its "second-step burden is a limited one"—a trial court neither weighs the evidence nor resolves evidentiary conflicts. (*Id.* at p. 891.) To overcome any asserted defenses, RGC had to show that they were inapplicable as a matter of law or make a prima facie showing of facts that, if accepted, would negate such defenses. (*Birkner, supra,* 156 Cal.App.4th at p. 285.) The litigation privilege is one such defense that may be considered at prong two. (*Ibid.*; *Feldman, supra,* 160 Cal.App.4th at p. 1485.) The trial court found Ehmcke's filing of an invalid mechanic's lien was absolutely privileged such that RGC could not

---

15    Nor does RGC support its argument with citation to authority. (Rule 8.204(a)(1)(B).) Although an argument *could* be made based on the policy articulated in Code of Civil Procedure section 425.16, subdivision (a) that the anti-SLAPP statute is concerned only with lawsuits "brought" to chill the valid exercise of constitutional rights, not for continued prosecution of moot actions, such an argument is neither made or implied by RGC here, and we do not reach it.

show its slander of title claim had minimal merit. We reach the same conclusion.

Codified at section 47, subdivision (b), the litigation privilege applies to communications made as part of a "judicial proceeding." Its principal purpose is to afford litigants and witnesses "utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213.) The privilege is absolute, providing a defense to all torts except malicious prosecution and applying "to all publications, irrespective of their maliciousness." (*Id.* at pp. 212, 215–216.) In general, the privilege applies to "to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." (*Id.* at p. 212.) "The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' " (*Action Apartment, supra,* 41 Cal.4th at p. 1241; quoting *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.)

RGC could not show that the litigation privilege was categorically inapplicable. The privilege extends to all manner of tort actions except malicious prosecution, and our court has previously applied the privilege to bar an owner's analogous slander-of-title claim following a subcontractor's unsuccessful attempt to foreclose on a mechanic's lien. (*Alpha & Omega, supra,* 200 Cal.App.4th at p. 665 [finding the filing of a notice of lis pendens protected by the litigation privilege].) In reaching this result, we rejected the owner's argument that the notice of lis pendens was not subject to the litigation privilege because the underlying real property claim lacked evidentiary merit. (*Id.* at p. 667.)

28

As explained more than a half-century ago by Justice Traynor, the privilege applies to *any* publication that is either required or permitted by law in the course of a judicial proceeding to achieve that party's litigation objective. (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 380−381.) "If the publication has a reasonable relation to the action and is permitted by law, the absolute privilege attaches." (*Ibid.*, partially abrogated on other grounds by § 47, subd. (b)(4).)

*Frank Pisano & Associates v. Taggart* (1972) 29 Cal.App.3d 1 (*Frank Pisano*) is closely on point. Engineering contractors recorded a mechanic's lien and filed an action for foreclosure and breach of contract. (*Id.* at p. 10.) The property owners filed a cross-complaint for damages, alleging disparagement of title from the recording of an invalid lien. (*Ibid.*) When the owners appealed the denial of relief on their cross-complaint, the contractors argued that pursuant to the litigation privilege, "no liability can be predicated upon its filing, even if it was not a valid claim of lien." (*Id.* at p. 13.) The court agreed. The disparagement of title action was based on the filing of a mechanic's lien, conduct that was absolutely privileged under section 47, subdivision (b) because it "was permitted by law and it had a reasonable relation to an action to foreclose the lien." (*Frank Pisano*, at p. 25.) "Any deficiencies in the lien procedure were a matter of defense to the action and did not militate against the privilege." (*Ibid.*)

RGC suggests *Frank Pisano* applies solely to the privileged filing of an *initial* mechanic's lien. But as the trial court explained, the case stands for the proposition that "if it's a privileged act to file a mechanic's lien, that privilege is not lost if it turns out that the mechanic's lien was not something that was ultimately valid or appropriate to do." We agree with the trial court that any deficiency in the lien "goes to the matter of defense to the

29

[foreclosure] action" but does not defeat the privilege. More generally, a party cannot avoid the litigation privilege "simply by asserting that litigation to which the statement is related is without merit, and therefore the proponent of the litigation could not in good faith have believed it had a legally viable claim. To adopt such an interpretation would virtually eradicate the litigation privilege for all but the most clearly meritorious claim." (*Feldman, supra,* 160 Cal.App.4th at p. 1489.) Accordingly, RGC did not show that the litigation privilege was inapplicable as a matter of law to its slander-of-title claim.

Nor did RGC make a prima facie showing of facts that, if accepted, would rebut the litigation privilege. Because the policy of promoting judicial access is not advanced by shielding attempts to profit from hollow threats, prelitigation communications are protected under the litigation privilege only if they relate to litigation "contemplated in good faith and under serious consideration." (*Action Apartment, supra,* 41 Cal.4th at p. 1251.) To overcome the litigation privilege on an anti-SLAPP motion, a responding party may establish facts that would, if accepted, negate these prerequisites. For example, in *Olivares v. Pineda* (2019) 40 Cal.App.5th 343 (*Olivares*), tenants suing their landlord's attorneys met their prong-two burden by showing that the challenged attorney communication did not precede an unlawful detainer action and was instead followed by repeated requests to settle short of litigation. (*Id.* at pp. 357−358.) A similar result was reached in *Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, where attorneys sent a demand letter to media outlets threatening litigation if they aired rape allegations against their client. The evidence supported a prima facie inference that the demand letter was intended as a bluff to silence the media, and not sent in serious contemplation of litigation—the letter was sent only

30

to outlets that had not run the story, and the client had not sued any of the multiple media outlets that already ran the story. (*Id.* at p. 684.)

RGC maintains that the filing of duplicative mechanic's liens following proper bonding, without statutory basis, demonstrates that Ehmcke did not file the fourth lien in good faith and seriously contemplating litigation. It relies on Vice President Taylor's opening declaration admitting that Ehmcke recorded the four liens because "it was not properly advised of the legal and statutory scheme regarding mechanic's lien law in California." But admitting to being misadvised does not imply a lack of good faith or serious contemplation of litigation; indeed, the fact that Ehmcke modified its behavior immediately after obtaining new counsel implies just the opposite. While no foreclosure action was initiated in the three weeks between the filing of the fourth successive lien and this action, there is no evidence comparable to that in *Olivares* to suggest that Ehmcke filed the fourth lien merely as a negotiating tactic or hollow threat. As established in *Frank Pisano*, the recording of a mechanic's lien is absolutely privileged, and does not give rise to a slander of title action even if the claim of lien is invalid. (*Frank Pisano, supra,* 29 Cal.App.3d at p. 25.) Because RGC failed to proffer facts suggesting a deviation from this rule, the trial court did not err in concluding the slander of title action was barred by the litigation privilege.[16]

To be sure, not *every* cause of action based on the recordation of an invalid mechanic's lien will be barred by the litigation privilege. Courts have long recognized that upon service of preliminary notice or upon later recordation of a mechanic's lien, a project owner may seek declaratory and injunctive relief challenging the validity of the lien. (*Connolly, supra,* 17

---

[16] In light of our conclusion, we do not reach Ehmcke's alternative arguments that RGC failed to show a false publication or damages to establish the minimal merit of its slander-of-title claim.

31

Cal.3d at pp. 822−823; see also 9 Miller & Starr, Cal. Real Estate, *supra*, § 32:37 ["An owner could probably also seek to remove any invalid lien by filing an action to quiet title."].) If Ehmcke had filed several duplicative liens before the filing of a release bond, RGC could seek a court order requiring it to post a single bond to release all duplicative liens. (*T.O., supra,* 165 Cal.App.4th at p. 148.) Or, if Ehmcke had tried to foreclose on an invalid lien, RGC could have filed a motion in that action to release the lien. (*Lambert, supra,* 228 Cal.App.3d at pp. 386−387; see *Howard S. Wright Construction Co. v. Superior Court* (2003) 106 Cal.App.4th 314, 318 ["A motion to remove a mechanic's lien is recognized as a device that allows the property owner to obtain speedy relief from an unjustified lien or a lien of an unjustified amount without waiting for trial on the action to foreclose the lien."].) We have found no authority to suggest that these types of actions would be barred by the litigation privilege, which generally precludes derivative *tort* liability. (*Feldman, supra,* 160 Cal.App.4th at p. 1486.)

Affirming the anti-SLAPP ruling here does not, as RGC suggests, render statutory bonding protections "illusory," "unenforceable," or "meaningless." Nor would it "nullify the statutory scheme." There are numerous avenues for a project owner burdened by invalid duplicative liens to seek judicial relief. Indeed, *Connolly* expressly permits a project owner to seek declaratory or injunctive relief to invalidate duplicative postbonding liens. We in no way suggest that quiet title and declaratory relief actions are in all instances barred. Rather, those claims were rendered moot here after Ehmcke released the fourth mechanic's lien. When Ehmcke filed its anti-SLAPP motion, an actual controversy remained solely as to the slander of title cause of action. Because *this* tort claim was barred by the litigation

32

privilege, RGC could not establish the minimal merit of its action at prong two of the anti-SLAPP inquiry.

4.      *Fee and Cost Award*

A defendant that prevails on an anti-SLAPP motion to strike is generally entitled to recover attorney's fees and costs.  (Code Civ. Proc., § 425.16, subd. (c)(1).)  RGC asserts that it "does not challenge the amount of fees and costs awarded, only the underlying determination that Ehmcke was the prevailing party on the anti-SLAPP motion entitled to an award of fees and costs."  Because we reject the underlying premise, we affirm the fee and cost award.

## DISPOSITION

The orders granting the anti-SLAPP motion and awarding Ehmcke fees and costs are affirmed.  Ehmcke is entitled to an award of appellate costs, as well as attorney's fees as the prevailing party in an anti-SLAPP appeal. (*Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1426.)


_____

DATO, J.

WE CONCUR:


_____

HUFFMAN, Acting P. J.


_____

HALLER, J.


33